UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANNA T.,[1]

               Plaintiff,

     v.                                                       19-CV-1524-LJV
                                                                        DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____


      On November 11, 2019, the plaintiff, Anna T. ("Anna"), brought this action under

the Social Security Act.  She seeks review of the determination by the Commissioner of

Social Security ("Commissioner") that she was not disabled.[2]  Docket Item 1.  On May 2,

2020, Anna moved for judgment on the pleadings, Docket Item 10; on July 31, 2020, the

Commissioner responded and cross-moved for judgment on the pleadings, Docket Item

14; and on August 21, 2020, Anna replied, Docket Item 15.

_____

     [1] To protect the privacy interests of social security litigants while maintaining
public access to judicial records, this Court will identify any non-government party in
cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order,
Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18,
2020).

     [2] Anna applied for both Social Security Income ("SSI") and Disability Insurance
Benefits ("DIB").  One category of persons eligible for DIB includes any adult with a
disability who, based on quarters of qualifying work, meets the Social Security Act's
insured-status requirements.  *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882
F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a
disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified
individual may receive both DIB and SSI, and the Social Security Administration uses
the same five-step evaluation process to determine eligibility for both programs.  *See*
20 C.F.R §§ 404.1520(a)(4) (concerning DIB); 416.920(a)(4) (concerning SSI).

For the reasons stated below, this Court grants Anna's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id.*  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).  "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles."  *Johnson*, 817 F.2d at 986.

---

[3]  This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## DISCUSSION

Anna argues that the ALJ erred in two ways.[4]  Docket Item 10-1.  First, she argues that the ALJ erred by giving "great weight" to the opinion of a physical therapist, Elizabeth Stom, MSPT, but then formulating a residual functional capacity ("RFC") that excluded—without explanation—important limitations that Ms. Stom identified.  *Id.* at 22.  Second, she argues that the ALJ erred in evaluating her subjective complaints of pain.  *Id.* at 29.  This Court agrees that the ALJ erred and, because that error was to Anna's prejudice, remands the matter to the Commissioner.

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source."  20 C.F.R. § 404.1527(c).  That evaluation requires the ALJ to resolve "[g]enuine conflicts" among the sources.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  And before an ALJ may deny a claimant's application, the ALJ must "confront the evidence in [the claimant's] favor and explain why it was rejected."  *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

"[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.  'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists."  *Genier v.*

---

[4] The ALJ initially denied Anna's application for SSI and DIB on June 4, 2014.  Docket Item 6 at 11-25.  On November 22, 2017, that decision was vacated by a decision and order in Case No. 15-CV-1037.  *Id.* at 595-607.  The ALJ rendered another unfavorable decision on July 12, 2019, which now is before this Court.  *See id.* at 465-79.

*Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).

An ALJ also must consider the opinions of "other sources"—such as physical therapists, *Acevedo v. Colvin*, 20 F. Supp. 3d 377, 389 (W.D.N.Y. 2014)—but is "free to discount" such opinions "in favor of the objective findings of other medical doctors," *Genier*, 298 F. App'x at 108-09; *see also Tolliver v. Astrue*, 2013 WL 100087, at *3 (Jan. 7, 2013).  Nevertheless, the ALJ should explain the weight assigned to the opinions of "other sources" that "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), in a way that "allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning," SSR 06-03P, 2006 WL 2329939, at *6.[5]  In other words, the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that . . . 'a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'"  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (third alteration in original) (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)).

Here, the ALJ evaluated the opinion of Ms. Stom consistent with these obligations and standards.  In fact, he gave her opinion "[g]reat weight."  *See* Docket Item 6 at 475.  But he then omitted important limitations in that opinion in formulating the

---

[5] The Code of Federal Regulations, 20 C.F.R. § 404.1527(c), enumerates six factors that the ALJ should consider in giving weight to the opinion of an "other source": "[1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ."  *See Tolliver*, 2013 WL 100087, at *3 (citations omitted) (summarizing the sub-section (c) factors).

RFC, and he did not provide any reason for that omission.  *See id.* at 470, 475.  So this Court has no idea whether the ALJ missed those limitations, ignored them, or disagreed with them for some legitimate reason.  And that legal error requires remand.  *See Labonte v. Berryhill*, 2017 WL 1546477, at *4 (W.D.N.Y. May 1, 2017) (remanding where the ALJ gave "significant weight" to the opinion of the claimant's chiropractor but "reject[ed]—without any explanation whatsoever—[the chiropractor's] opinion that she would frequently be off task").

Ms. Stom completed a functional capacity evaluation ("FCE") that limited Anna to "[o]ccasional[]" pushing, pulling, working her arms overhead, sitting, standing, and walking.  Docket Item 6 at 962-63.  Specifically regarding Anna's ability to sit, stand, and walk, Ms. Stom opined that Anna could sit for up to one-third of the workday, walk for up to one-third of the workday, and stand for up to one-third of the workday and that she could not work while standing.  *See id.* at 962-63 (limiting Anna to "[o]ccasional[]" sitting, standing, and walking); *see id.* at 963 (defining "[o]ccasional" as "up to 1/3 of the day"). Ms. Stom ultimately recommended that Anna "attempt" work in a sedentary job "where she can frequently change positions."  *Id.* at 964.

In affording Ms. Stom's opinion "[g]reat weight," the ALJ reasoned that "[Ms. Stom's] findings [were] consistent with the functional capacity testing administered during the course of the FCE[, and] . . . consistent with the contemporaneous treatment records in evidence."  *Id.* at 475.  He also noted that Ms. Stom "personally examined [Anna] and conducted testing within her physical therapy and functional capacity specialty during the relevant period."  *Id.*  And the ALJ explicitly mentioned Ms. Stom's limitation that Anna "frequently" needed to change positions.  *Id.* ("Great weight is

accorded to the [FCE] of September 2013 rendered by Elizabeth Stom [] who opined the claimant could not engage in full capacity medium work but could attempt sedentary work *with frequent changes of positions*") (emphasis added).  But the ALJ's RFC did not include any limitation on Anna's ability to push, pull, sit, stand, or walk, nor did it incorporate her need to "frequently change positions."  *See id.* at 470.  In fact, the RFC included no physical limitations other than limiting Anna to "sedentary work" with "no more than occasional work above shoulder[ ]level."[6]  *Id.*

The ALJ's failure to incorporate Ms. Stom's opinion that Anna must be able to frequently change positions—or even to address any of the sitting limitations that her opinion included—is particularly troubling.  Indeed, "[w]hen the record indicates that a [claimant] has significant limitations with regard to [her] ability to sit for extended periods of time, the ALJ should engage in a detailed discussion concerning [the claimant's] restrictions."  *Overbaugh v. Astrue*, 2010 WL 1171203, at *9 (N.D.N.Y. Mar. 22, 2010).  Under such circumstances, the RFC "must be specific as to the frequency of the individual's need to alternate sitting and standing."  SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *see also Overbaugh*, 2010 WL 1171203, at *9 ("Even though the treating physician set forth restrictions regarding [the claimant's] need to alternate between sitting and standing, SSR 96-9p and caselaw clearly dictate that the ALJ had a duty to specify the extent of the limitation.").  That is because a claimant's need to alternate

---

[6] The ALJ found that Anna had the RFC to "perform sedentary work as defined in 20 CFR [§§] 404.1567(a) and 416.967(a) except [Anna] can have no more than occasional work above shoulder[ ]level.  [She] can perform simple, repetitive one and two-step tasks, and [cannot] perform complex work (defined as work involving multiple simultaneous goals or objectives or the need to independently set quality, quantity, or methods standards)."  Docket Item 6 at 470.

between sitting and standing "may erode the occupational base"—for example, by making even sedentary or light work impossible to perform.  *See Overbaugh*, 2010 WL 1171203, at *9 (citing *Iannopollo v. Barnhart*, 280 F. Supp. 2d 41, 50 (W.D.N.Y. 2003)).[7]

Moreover, the ALJ did not identify other medical evidence that might justify excluding the limitations that Ms. Stom found.  *See Genier*, 298 F. App'x at 108-09 (explaining that the ALJ may "discount" other source opinions "in favor of the *objective findings of other medical doctors*") (emphasis added).  The only opinion to which the ALJ afforded weight similar to that given Ms. Strom's was that of the medical expert, Andrew Brown, M.D.  *See* Docket Item 6 at 475.  Dr. Brown reviewed some of Anna's medical records and testified that Anna could perform sedentary work with occasional overhead activity.  *Id.* at 496-97.  He opined that the "repetitive[]" nature of light work would wear too heavily on Anna and that her neck was more "fatigue-able."  *Id.* at 495-96.  The ALJ afforded Dr. Brown's opinion "[s]ignificant weight," finding it "well-supported [sic] by the objective medical evidence."  *Id.* at 475.

---

[7] The RFC lacked any detail about the "the frequency of [Anna's] need to alternate sitting and standing."  *See* Docket Item 6 at 470.  That violated the Commissioner's own rules as well.  *See* SSR 96-9p, 1996 WL 374185, at *7.

Moreover, while Ms. Stom defined the term "occasional" when she limited how often Anna could push, pull, sit, stand, and walk, *see* Docket Item 6 at 962-63, she did not define the term "frequently" when she opined that Anna "frequently needs to change positions," *see id.* at 964.  Because the RFC should have detailed how frequently Anna needed to change positions, *see* SSR 96-9p, 1996 WL 374185, at *7, the ALJ had a duty to contact Ms. Stom for clarification on how often and for how long Anna needed to change positions, *see Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.").

In weighing the opinion evidence, however, the ALJ did not reason that Dr. Brown's testimony was inconsistent with Ms. Stom's opinion.  *See id.* at 475-77.  On the contrary, the ALJ described both Dr. Brown's and Ms. Stom's opinions as consistent with the medical evidence.  *Compare id.* at 465 (describing Dr. Brown's opinion as "well-supported by the objective medical evidence already discussed in this decision"), *with id.* (describing Ms. Stom's opinion as "consistent with the contemporaneous treatment records in evidence").  Furthermore, Dr. Brown was not asked about, and did not address, Anna's limitations in sitting, standing, walking, pushing, or pulling or her need to change position.  *Id.* at 492-504.  So the ALJ did not reject, and could not have rejected, Ms. Stom's limitations in favor of Dr. Brown's opinion.[8]  *See Genier*, 298 F. App'x at 108-09.

And if that is what the ALJ intended to do, it was incumbent on him to be clear about it.  Merely assigning more weight to Dr. Brown's opinion than to Ms. Stom's is simply insufficient to justify omitting the limitations that Ms. Storm identified; again, without an explanation, it is not clear to the Court whether the ALJ overlooked or disagreed with Ms. Stom's limitations—and, if the latter, why.  *See Craft*, 539 F.3d at 673 (requiring an "'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that . . . 'a reviewing court . . . may

---

[8]  Dr. Brown never examined Anna but based his opinion "mainly on the physical findings documented in the [medical] records" he reviewed.  Docket Item 6 at 503-04.  Ms. Stom, in contrast, evaluated Anna in person and formulated her opinion after seeing Anna attempt to walk and perform other functional tasks.  *See id.* at 961-64.  And an ALJ "generally" should give more weight to "an examining . . . than a non-examining source."  *Kya M. v. Comm'r of Soc. Sec.*, 2020 WL 7296849, at *4 (W.D.N.Y. Dec. 11, 2020).

assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review'").

The ALJ's error was not harmless: the limitations that Ms. Stom identified—if accepted and adopted—would have led to the conclusion that Anna was disabled.  For example, Ms. Stom's opinion limited Anna to only "[o]ccasional[]" sitting.  Docket Item 6 at 962.  But the two jobs that the vocational expert ("VE") identified, and that the ALJ relied on to find that Anna was not disabled, were sedentary positions that require sitting for a full workday or for most of one.[9]  *See* 669.687-014 Dowl Inspector, 1991 WL 686074 (Jan. 1, 2016); 521.687-086 Nut Sorter, 1991 WL 674226 (Jan. 1, 2016). Moreover, the VE did not testify about whether these jobs could be performed by someone who has to alternate among sitting, standing, and walking, or who needs to frequently change positions, *see* Docket Item 6 at 527-33, as Ms. Stom opined was the case for Anna, *see id.* at 962-63.

In addition, the VE testified that Anna would be precluded from employment if she were off task for more than 8% of the workday, *id.* at 532, but according to Ms. Stom's opinion, that may well be the case here, *see id.* at 962-63.  After all, Ms. Stom limited Anna to sitting for one-third of the workday, standing for one-third of the

---

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).  Because the definition of "sedentary work" contemplates that Anna would need to perform at least some work while standing, *see id.*, the jobs that the ALJ identified for Anna also might require that Anna perform some duties while walking or standing.  But the ALJ did not attempt to reconcile that with Ms. Stom's opinion that Anna was "[u]nable" to work while standing.  *See* Docket Item 6 at 962.

workday, and walking for one-third of the workday, with the added limitation that Anna was "[u]nable" to work while standing. *Id.* Under the limitations set by Ms. Stom, then, Anna would be unable to work for the one-third of the workday that she is standing—far more than the 8% that would preclude employment.

Ms. Stom also limited Anna to only *occasional* pushing and pulling, *id.* at 962, but the jobs of inspector and sorter both require *frequent* pushing and pulling, *compare* 669.687-014 Dowl Inspector, 1991 WL 686074 (requiring "a negligible amount of force frequently . . . to lift, carry, push, pull, or otherwise move objects, including the human body"), *and* 521.687-086 Nut Sorter, 1991 WL 674226 (same), *with* Docket Item 6 at 962 (Ms. Stom's limiting Anna to "[o]ccasional[]" pushing and pulling). So even though the definition of "sedentary work"—which the ALJ found that Anna could perform—does not explicitly address pushing and pulling, *see* 20 C.F.R. §§ 404.1567(a), 416.967(a), the VE's testimony made frequent pushing and pulling a necessary part of the jobs that the ALJ contemplated for her—frequent pushing and pulling that Ms. Stom opined Anna could not do, *see* Docket Item 6 at 962. The ALJ failed to address that, either by incorporating the limitation into the RFC or by explaining why it was rejected.

The ALJ's error is particularly significant because the limitations Ms. Stom identified also were found by Anna's treating physician, Franco Vigna, M.D., and corroborated by the treatment notes of other providers. Dr. Vigna specifically found Anna to be "[m]oderatly [l]imited" in walking, standing, sitting, pushing, and pulling. *Id.* at 431. Dr. Vigna also reported that Anna "complain[ed] of low back pain with bilateral lower extremity pain if she stands for 10 minutes or more[,] . . . numbness and tingling into her feet if standing[,] . . . weakness in her legs with standing[,] . . . [and] groin pain

10

when sitting." *Id.* at 321.  Similarly, Pratibha Bansal M.D., reported that Anna described being able to only "walk for 1 block[, ] sit for 45 minutes[,] and stand for 5 minutes" at a time. *Id.* at 413.

In sum, the ALJ erred by failing to address the limitations in an opinion to which he gave great weight, and that error is not harmless.  Because the limitations that Ms. Stom identified would "have an effect on the outcome of [Anna's] case," the ALJ, on remand, either must explain why he did not credit Ms. Stom's opinion that Anna needed to limit pushing, pulling, sitting, standing, and walking and frequently change positions, or he must incorporate those limitations into the RFC, *see* 20 C.F.R. § 404.1527(f)(2); and if the latter, he must be "specific as to the frequency of [Anna's] need to alternate [between] sitting and standing," *see* SSR 96-8p, 1996 WL 374184, at *7.[10]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 14, is DENIED, and Anna's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

---

[10] The Court "will not reach the remaining issues raised by [Anna] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015).

SO ORDERED.

Dated:          March 3, 2021
                Buffalo, New York


                                            _/s/ Lawrence J. Vilardo_
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE